UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

*************************************
JANE DOE and                          *
JOHN DOE                              *
                                      *
        Plaintiffs                    *
                                      *
v.                                    *        CASE NO. 1:22-cv-00535
                                      *
GOOGLE, LLC,                          *
KMT WIRELESS, LLC d/b/a               *
CYNERGY                               *
ENTITIES 1 – 99 and                   *
EMPLOYEES A - X                       *
                                      *
*************************************

## COMPLAINT AND DEMAND FOR JURY TRIAL

### INTRODUCTION

1.      Jane and John Doe are husband and wife. In August 2021, John bought a Google

Pixel 5A 128 GB phone from Google and signed up for Google's phone care plan. Jane used the

phone. In October 2021, the phone became entirely inoperable. In accordance with Google's

instructions, the Does mailed the phone to Google for servicing.  On November 30, 2021, while

the phone was still at Google's repair facility, an employee or employees of Google and/or its

agents, used the phone to access the Does' private photos and sign into Jane's social media

accounts. The employee(s) posted an intensely intimate photo of the couple on Jane's personal

and professional Instagram and Facebook pages, making it appear as if it was Jane who posted

the photo. The employee(s) also sent insulting texts messages to at least one of Jane's business

contacts, attempted to access the Does' financial information and social security numbers, and

tried to change the Does' passwords in order to prevent them from stopping him or her. The

employee(s) was only thwarted when the Does became aware of what was going on, and John

was able to remotely wrest control of the phone back and wipe it using the "Find My Device" app. The employee(s) was physically located at Google's phone servicing facility while engaged in these behaviors.

2.      The Does are seeking damages for the physical and psychic trauma and extreme emotional distress they have suffered as a result of this incident.

## PARTIES

3.      Plaintiff Jane Doe is an individual and citizen of the State of New Hampshire. She is the spouse of Plaintiff John Doe.

4.      Plaintiff John Doe is an individual and citizen of the State of New Hampshire. He is the spouse of Plaintiff Jane Doe.

5.      Defendant Google, LLC ("Google") is a Delaware Limited Liability Company with a principal office at 1600 Amphitheater Parkway, Mountain View, CA 94043. Upon information and belief, Google, LLC is a subsidiary of XXVI Holdings, Inc., which is a Delaware Corporation.

6.      Defendant KMT Wireless, LLC d/b/a Cynergy ("Cynergy") is a Georgia LLC that does business at 4055 Corporate Drive, Grapevine, Texas 76501. Paperwork filed by KMT Wireless, LLC with the Texas secretary of state identifies KMT Wireless LLC as a foreign LLC with a principal office address of 6080 North belt Drive, Norcross, GA 30071. However, paperwork filed by KMT Wireless, LLC with the Georgia secretary of state lists the entity as having a principal office address of 385 Waddington Trail, Duluth, GA 30097. Upon information and belief, LLC members include Young Keun Choi of Lawrenceville, GA, Ji Hyun Park of Swanee, Georgia, and Darin Mickel, of Forth Worth Texas.

7.      Defendants Entities 1 – 99 (collectively hereinafter referred to "Entity 1") are any other entities that were involved in any way in the servicing of the phone and/or employed or were otherwise the master of Defendant Employees A – X.

8.      Defendants Employees A – X (collectively hereinafter referred to as "Employee X") are the employee(s) and/or agent(s) of the other Defendants who directly accessed information on the phone, stole materials from the Does, posted the intimate photograph on Jane Doe's social media page, posed as Jane Doe on social media and through direct messages, and otherwise misappropriated the Does' information. The name or names of said employees are unknown to the Does at this time, although upon information and belief those names are known at least by Google and Cynergy. Upon information and belief, Employees A – X are residents of the State of Texas, as they were employed in Texas at the time of the incident.

## JURISDICTION AND VENUE

9.      Jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds $75,000.00.

10.      Venue is appropriate in this Court because the Plaintiffs are citizens of the State of New Hampshire, and their damages occurred here.

## ALLEGATIONS COMMON TO ALL COUNTS

11.      On November 30, 2021, Jane and John Doe went out for an afternoon walk with their dogs. They were gone for approximately a half hour.

12.      They returned home to find that an unusual number of people had been calling and messaging Jane.

13.      One of those people was Jane's hairstylist. The stylist had reached out numerous times. Jane called the stylist's salon.

14.     An unknown person, presumably the receptionist, answered the phone.

15.     The unknown person told Jane that the stylist was calling about an extremely personal photograph that had been posted on Jane's social media, apparently by Jane herself.

16.     John went to the computer and pulled up Instagram. He observed a photograph depicting he and Jane in a highly personal and private moment. The photograph was of an extremely graphic and sexual nature.

17.     Neither of the Does had posted the photograph, nor would they ever have posted or shared the photograph.

18.     The photograph was cross posted on Jane's Facebook page, her private Instagram, and an Instagram account that Jane maintains for her business. That account had between 2300 – 2400 followers. Between the accounts, nearly all of Jane and John's friends, family, acquaintances, and business contacts, could have or did view the photograph.

19.     John immediately removed the photograph.

20.     Panicked and distraught, the Does considered who could have done such a thing.

21.     They quickly realized it had to have been someone affiliated with Google.

22.     On or about August 19, 2021, John purchased a Google Pixel 5A 128GB Black phone through Google's online store.

23.     When checking out, John was given the option to sign up for Google's "Preferred Care" plan. This is an insurance program by which Google promised to repair or replace the phone if it broke for reasons covered by the care plan.

24.     John signed up.

25.     John paid $5.00 per month for the service.

26.     John's credit card was charged by Google each month.

4

27.     The Preferred Care Service Contract Terms identifies the "Service Contract Seller" as Google, Inc., "including its applicable subsidiaries," of Mountain View, CA.. The Terms and Conditions state that the Service Contract Seller is "the entity that sold the Service Contract to You."

28.     The terms and conditions also provide the following in relevant part:

**IF YOU NEED SERVICE**
All claims must be reported as soon as reasonably possible. . . .

**TELEPHONE HARDWARE AND SOFTWARE SUBSCRIBER ASSISTANCE:** To arrange for service, call the toll-free number or visit Us at the website indicated on the Declaration Page. A service representative will assist You . . . To the extent that Our telephone diagnosis confirms a covered hardware failure, We will process Your claim and arrange for any applicable service of Your Product. . . .

**SERVICE LOCATION:** Repairs will be performed at an authorized repair center determined by Us.. . . .

**REPLACEMENT OPTION:** At Our option, following Our telephone diagnosis, We will either:
1)  Replace Your Product with a new, refurbished, or recertified product of like kind and quality if We are unable to repair Your Product or if the repair cost exceeds the current retail replacement value of Your Product. . . . If We replace Your Product, We will ship the replacement product to You; or
2)  Issue a cash credit equal to the value of the replacement product . . . The cash credit, with Your authorization, will be deposited in Your account with Google . . .
When you receive either the replacement product, cash credit, or settlement, the damaged/unrepairable Product becomes Our property. . . .
Once we receive the damaged/unrepairable Product, We will inspect the Product and validate that the reported hardware failure is covered under this Service Contract. . . .

29.     On or about October 13, 2021, the Google phone became utterly inoperable. It would not charge or turn on.

30.     In accordance with the Preferred Care terms and conditions, John requested service and was instructed to submit for repairs through the website: https://mydeviceprotect.com. The website indicates it is run by Assurant, as "a service for Google Store." John was instructed to mail the phone in for servicing.

31.     In accordance with the instructions provided by Google, and using the shipping label provided by Google, on or about October 20, 2021, John mailed the phone to Google in care of Cynergy at 4055 Corporate Drive, Grapevine, TX 76051-2325.

32.     On or about October 19, 2021, the Does received a replacement phone from Google to be used while the old phone was being repaired.

33.     On or about November 3, 2021, John received a message from "Assurant Claims." The message confirmed that the device had been received and indicated the following:

IMEI or Serial Number:  354292953330821
Claim Number:          101-54005149-1
RMA Number:            RMA92904568

34.     On the day of the incident which forms the basis of this Complaint, the Does had not heard anything further about the phone. It had not been returned to them.

35.     Although John was the one that purchased the phone and signed up for the service contract, Jane used the phone. The phone was connected to Jane's social media accounts, as well as her Google account.

36.     Thus, whoever was servicing the phone would have had access to the couple's intimate photos and could post on Jane's social media accounts, pretending to be Jane.

37.     Whoever had the phone also had access to the Does' Google account, and by extension a tremendous amount of the Does' private information in addition to the Does' photographs and Jane's social media pages; that person could access the couple's financial information, personal and professional contacts, email accounts, and other personal data.

38.     John immediately tried to log into the couple's Google account. But someone had changed the password. Upon information and belief, that person was Employee X. Employee X had also changed the account language to Spanish.

39.     John set to work trying to change the password again, in order to retake control of the account.

40.     Changing the Google password required two factor-authentication. One of the authentication checks was John's phone. Another was the phone used by Jane.

41.     Upon information and belief, Employee X was alerted to the fact that John was trying to change the Google account password through the phone. Employee X began simultaneously try to change the password to lock the Does out of the account.

42.     John and Employee X battled for approximately 30-40 minutes. John would request a password reset and try to enter the two-factor authentication data from his phone, while Employee X was doing the same. This effectively prevented either party from taking control of the account.

43.     Eventually, John was able to finish the two-factor authentication process and change the password on the Does' Google account.

44.     The Does had the "Find My Device" app on the phone. Once John was able to change the password on the couple's Google account, he  was able to use the app to remotely wipe the phone.

45.     John was also able to use the Find My Device app to confirm that the phone was physically located at 4055 Corporate Drive, Grapevine, Texas 76501. This is a location operated by KMT Wireless, LLC d/b/a Cynergy.

46.     According to Cynergy's website, Cynergy is "recognized as the world's largest Google A[pplication] S[ervice] P[rovider] . . . Our scope provides customer data information protection from returned hardware products and offers repair level services for refurbished

products for fulfillment and advanced replacements." www.cynergyus.com/about.html (as of 11/7/22).

47.     As soon as the phone was wiped, John called Assurant.

48.     He contacted Assurant specifically because Assurant was the entity that had sent him the notice that it had received the phone.

49.     However, the person at Assurant with whom John spoke told him that Assurant was just the "processor" of financial information, and not involved in actually collecting or servicing the phone. The Assurant employee told John to contact Google.

50.     John called Google's general customer service line. Google's customer service representative told John there was nothing that Google could do because their offices were shut down due to COVID. When John pressed the critical nature of the incident, the customer service representative indicated he would "elevate" the case and John would hear back from Google.

51.     The Does then reported the incident to the police in their city of residence.

52.     The Does did not hear back from Google the day of the incident. Because the Does were terrified and did not know what to do, John made a post on the Reddit website describing what had happened and asking if anyone had similar experiences. When the post began to grow exponentially, John removed it.

53.     However, a day or two later John received a text message from a stranger who alerted him that a game designer and prominent Twitter user with tens of thousands of followers named Jane McGonigal ("McGonigal") had posted about a similar incident with her Google phone. This incident took place within a couple of days of the incident involving the Does' phone. McGonigal tweeted that she had sent her phone to Google's Texas facility for repairs and that she was subsequently alerted to a series of suspicious activities through her other accounts that caused

her to believe that someone at the repair facility was using the phone to access her accounts and was also likely looking for nudes. The incident involving McGonigal was reported on by various news outlets.

54.     After McGonigal's story began to garner media attention, McGonigal posted a follow-up tweet indicating that *"Pixel Support and Google Security have been extremely helpful today . . ."*

55.     Google itself subsequently put out a couple of statements, first saying that it was investigating, and then saying that *"the issue impacting the user was not related to the device RMA [Return Merchandise Authorization]."*

56.     Upon information and belief, neither McGonigal nor Google have offered any further public clarification about what happened.

57.     The Does lacked McGonigal's public platform and Google reacted quite differently to their situation.

58.     Over the next several days, John contacted Google multiple times without getting any substantive response.

59.     On or about December 5, 2021 John received a message on Reddit from the user "Wall_Castle_76", identifying themselves as "Marty Elwell" ("Elwell") and as working in Google Customer Care as Director of Pixel Customer Care.  His message read *"[w]e'd like to investigate the reports of a security breach on your Google account.  Could you please contact me at* melwell@google.com *to discuss next steps?  Thank you."*

60.     John saw the message and replied to it on or about December 6, 2021. Eventually John had a phone conversation with Elwell.

61.     When they spoke, Elwell did not deny that the phone had been in Google's possession and control when the incident occurred. He offered John no substantive explanation or information about what happened. The only information Elwell provided was to confirm that Google was still in possession of John's phone. Elwell suggested that the Does should change the passwords on all their accounts – something that John had already done.

62.     Meanwhile, the Does had uncovered additional nefarious activities undertaken by Employee X.  The Does discovered that Employee X:

- Sent at least one insulting and profanity-laced text message to one of Jane's business contacts;

- Sent a small amount of money (presumably as a test) through the couple's PayPal account to an unknown third party;

- Accessed at least one pornography site using the phone;

- Clicked on an ad for a Capital One credit card;

- Attempted to find the last four digits of the couple's social security numbers.

63.     Furthermore, although the Does know of only one intimate photo that was posted on Jane's social media, they had additional intimate photos saved in their photo account. Employee X had access to all these photos. The Does have been struggling with the uncertainty of what Employee X may have done with these additional photos, particularly as they know Employee X accessed a pornography site through the phone.

64      At the time of the incident, Jane was 32 years old, and John was 33 years old. They have been married since 2016.

65.     John worked in tech. Jane worked in retail. Jane also started her own small business in 2020. Jane's business supplied local companies with specialty vending machines that dispensed

art. At the time this incident occurred, she was trying to grow the business. She had arrangements with eight artists who were providing art for the machines and had one vending machine in a local business.

66.     At the time of the incident and afterwards, the Does were also participating in IVF treatment in an effort to have a baby. Those efforts have been significantly affected by what happened to them.

67.     The Does lives have been unalterably changed as a result of the Defendants' actions as has Jane's physical health.

68.     Both Does have suffered severe emotional distress due to the Defendants' actions.

69.     Jane received numerous messages through social media reacting to the photograph. Approximately 100 people unfollowed her vending machine business' Instagram page in the time that the photograph was posted.

70.     The Does are aware that a wide variety of community members saw the photo. For example, a friend of Jane has a son who was a high school freshman. He told his mother about seeing it.

71.     Jane has been so traumatized that she has trouble leaving her home and interacting with community members. She was unable to face her coworkers at her retail job and did not return to her position for a long time due to the stress and embarrassment she suffered at the hands of Google and its agents.

72.     Jane continues to struggle facing people in her everyday life. She is consumed by thoughts about whether they saw or heard about the photo. She is also petrified that Employee X used the Does' intimate photos in ways that the Does do not know about, for example by providing them to pornography websites.

73.     Jane has been diagnosed with adjustment disorder and post-traumatic stress disorder as a result of this incident. She has lost a tremendous amount of weight due to the stress and trauma and is participating in therapy and taking medication for these issues. The Does have paused IVF treatment.

**CAUSES OF ACTION**

**COUNT I:**
**Negligent Hiring and Supervision**
**Jane Doe and John Doe v. Google, LLC**

74.     The Does incorporate paragraphs 1 – 73 by reference.

75.     An entity conducting an activity through servants or other agents is subject to liability for harm resulting from the servants or agents' conduct if the entity is negligent or reckless: (a) in giving improper or ambiguous orders or in failing to make proper regulations; or (b) in the employment of improper persons in work involving risk of harm to others; or (c) in the supervision of the servants or agents' activity; or (d) in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not they are the entities' servants or agents, upon premises or with instrumentalities under the entities' control. *See* Restatement (Second) of Agency, §213,

76.     Google sold the preferred care plan to customers including John Doe, and accepted phones for servicing, knowing that it or its agents would be receiving and servicing phones that contained all manner of personal, private, and sensitive information.

77.     Google had a duty to ensure that it or the agents it retained to oversee phone repairs had established reasonable and appropriate policies to safeguard any personal, private, or sensitive information accessible through the phone belonging to John Doe and used by Jane Doe.

78.     Google had a duty to properly vet employees to ensure that the people it retained to perform repairs were trustworthy and professional, rather than people who would criminally and/or tortiously misuse the phone.

79.     Google had a duty to supervise the agents or employees it retained to perform repairs on the phone belonging to John Doe and used by Jane Doe to ensure that the agents or employees were actually performing their job duties, rather than accessing, stealing, and otherwise misusing the Does' personal, private, and sensitive information.

80.     While Employee X was physically located at 4055 Corporate Drive, Grapevine, Texas 76501, which is the phone servicing facility operated by Google's agent Cynergy, Google had a duty to prevent Employee X form using the phone to access, steal, and otherwise misuse the Does' personal, private, and sensitive information.

81.     Google breached these duties by failing to establish or enforce policies that would have safeguarded the Does' personal, private, and sensitive information that was accessible through the phone belonging to John Doe and used by Jane Doe, and by failing to properly vet and/or supervise Employee X, who was not only given access to the phone, but who posted a sexually explicit and intimate photograph on Jane Does' social media, posed as Jane Doe to send at least one profanity laden text message to a work contact, and accessed the Does' financial information, all while was physically located at the facility located at 4055 Corporate Drive, Grapevine, Texas 76501, which is operated by Google's agent Cynergy.

82.     As a direct, proximate, and foreseeable result of Google's negligence, Jane Doe has suffered injuries including severe emotional distress and mental anguish, post-traumatic stress disorder, adjustment disorder, a loss of enjoyment of life, reasonable and necessary medical expenses, loss of time from her gainful employment, attorneys fees, and other injuries

and losses, and John Doe has suffered injuries including severe emotional distress and mental anguish, loss of consortium, a loss of enjoyment of life, attorneys fees, and other injuries and losses. Furthermore, the conduct at issue was wanton, malicious, or oppressive, thus warranting the imposition of enhanced compensatory damages.

**COUNT II:**
**Invasion of Privacy: Public disclosure of Private Facts**
**Jane Doe and John Doe v. Google**

83.     The Does incorporate paragraphs 1 – 82 by reference.

84.     One who gives publicity to a matter concerning the private life of another is subject to liability for invasion of privacy if the matter publicized is of a kind that would be highly offensive to a reasonable person and is not of legitimate concern to the public.

85.     Employee X invaded the Does' privacy by posting an intensely intimate photograph belonging to the Does and meant to be shared only between husband and wife on Jane Does' public social media page so that it could be seen by several thousand of the Does' friends, family, business contacts, acquaintances, and other community members, and did so while posing as Jane Doe. Having this type of photograph exposed in this way would be highly offensive and traumatic to any reasonable person, and the photograph was not of any legitimate concern to the public.

86.     Upon information and belief, Employee X was an agent and/or employee of Google when he accessed the Does' data and posted the photograph on Jane Doe's social media pages. Upon information and belief, Employee X had access to the phone because Employee X's job involved servicing and repairing the phone on Google's behalf. Upon information and belief, the tortious behavior engaged in by Employee X took place while Employee X was at work and

while engaged in servicing the phone on Google's behalf. Accordingly, Google is liable for Employee X's actions.

87.     As a direct, proximate, and foreseeable result of Employee X's conduct for which Google is liable, Jane Doe has suffered damages including a deterioration of her physical and mental well-being, requiring her to seek medical care for post-traumatic stress disorder, adjustment disorder, and severe and significant weight loss, severe emotional distress and mental anguish, loss of enjoyment of life, reasonable and necessary medical expenses, loss of time from her gainful employment, attorneys fees, and other injuries and losses, and John Doe has suffered injuries including severe emotional distress and mental anguish, loss of consortium, a loss of enjoyment of life, attorneys fees, and other injuries and losses. Furthermore, the conduct at issue was wanton, malicious, or oppressive, thus warranting the imposition of enhanced compensatory damages.

**COUNT III:**
**Invasion of Privacy: Intrusion Upon Seclusion**
**Jane Doe and John Doe v. Google**

88.      The Does incorporate paragraphs 1 – 87 herein by reference.

89.     One who suffers an intrusion upon their solitude or seclusion may recover damages for the deprivation of their seclusion.

90.     Employee X intruded upon the Does' seclusion by accessing intensely intimate photographs belonging to the Does and meant to be shared only between husband and wife, stealing at least one such photograph, posting the photograph on Jane's public social media pages so that it could be seen by several thousand of the Does' friends, family, business contacts, acquaintances, and other community members, and making it appear that Jane herself had posted the photo.

91.     Upon information and belief, Employee X was an agent and/or employee of Google when he accessed the Does' data and posted the photograph on Jane Doe's social media pages. Upon information and belief, Employee X had access to the phone because Employee X's job involved servicing and repairing the phone on Google's behalf. Upon information and belief, the tortious behavior engaged in by Employee X took place while Employee X was at work and while engaged in servicing the phone on Google's behalf. Accordingly, Google is liable for Employee X's actions.

92.     As a direct, proximate, and foreseeable result of Employee X's conduct for which Google is liable, Jane Doe has suffered a deterioration of her physical and mental well-being, requiring her to seek medical care for post-traumatic stress disorder, adjustment disorder, and severe and significant weight loss. Jane Doe is also entitled to damages for enjoyment of life, reasonable and necessary medical expenses, loss of time from her gainful employment, attorneys fees, and other injuries and losses arising out of Employee X's actions. John Doe has suffered injuries including severe emotional distress and mental anguish, loss of consortium, a loss of enjoyment of life, attorney's fees and other injuries and losses. Furthermore, the conduct at issue was wanton, malicious, or oppressive, thus warranting the imposition of enhanced compensatory damages.

**COUNT IV:**
**Invasion of Privacy: False Light**
**Jane Doe and John Doe v. Google**

93.     The Does incorporate paragraphs 1 - 92 by reference.

94.     An entity is liable for invasion of privacy based on false light if they cause the publication of true information that creates a false impression about the plaintiff.

95.     Employee X placed the Does in a false light by accessing intensely intimate photographs belonging to the Does and meant to be shared only between husband and wife, stealing at least one such photograph, posting the photograph on Jane Doe's public social media pages so that it could be seen by several thousand of the Does' friends, family, business contacts, acquaintances, and other community members, and making it appear that Jane Doe herself had posted the photo. Employee X's actions created the impression that the Does intended for their friends and family to see the highly intimate photograph, and given the nature of the photograph, that implication would be highly offensive to a reasonable person.

96.     Employee X also posed as Jane Doe and sent profanity laden text messages to at least one of her business contacts. By engaging in this behavior, Employee X intentionally engaged in behavior that was intended to make Jane Doe appear unprofessional, rude, and unreasonable to her business contacts.

97.     Upon information and belief, Employee X was an agent and/or employee of Google when he accessed the Does' data and engaged in the above-described conduct. Upon information and belief, Employee X had access to the phone because Employee X's job involved servicing and repairing the phone on Google's behalf. Upon information and belief, the tortious behavior engaged in by Employee X took place while Employee X was at work and while engaged in servicing the phone on Google's behalf. Accordingly, Google is liable for Employee X's actions.

98.     As a direct, proximate, and foreseeable result of Employee X's conduct for which Google is liable, Jane Doe has suffered a deterioration of her physical and mental well-being, requiring her to seek medical care for post-traumatic stress disorder, adjustment disorder, and severe and significant weight loss. Jane Doe is also entitled to damages for enjoyment of life,

reasonable and necessary medical expenses, loss of time from her gainful employment, attorneys

fees, and other injuries and losses arising out of Employee X's actions. John Doe has suffered

injuries including severe emotional distress and mental anguish, loss of consortium, a loss of

enjoyment of life, attorneys' fees and other injuries and losses. Furthermore, the conduct at issue

was wanton, malicious, or oppressive, thus warranting the imposition of enhanced compensatory

damages.

### COUNT V:
### Intentional Infliction of Emotional Distress
### Jane Doe and John Doe v. Google

99.     The Does incorporate paragraphs 1 - 98 by reference.

100.    Employee X intentionally caused severe emotional distress to the Does by

exploiting the fact that the phone broke and the Does trusted that it would be professionally and

responsibly handled by Google and the other Defendants in accordance with the care plan.

Employee X accessed intensely intimate photographs meant to be shared only between husband

and wife, stole at least one such photograph, posted the photograph on Jane's public social media

pages so that it could be seen by several thousand of the Does' friends, family, business contacts,

acquaintances, and other community members, and made it appear that Jane herself had posted

the photo. Employee X also posed as Jane and sent profanity laden text messages to at least one

of Jane's customers and attempted to access the Does' financial information and social security

numbers.

101.    This conduct is so outrageous in character, and so extreme in degree, as to go

beyond all possible bounds of decency, and is to be regarded as atrocious and utterly intolerable

in a civilized community.

102.     Upon information and belief, Employee X was an agent and/or employee of Google when he accessed the Does' data and posted the photograph on Jane Doe's social media pages. Upon information and belief, Employee X had access to the phone because Employee X's job involved servicing and repairing the phone on Google's behalf. Upon information and belief, the tortious behavior engaged in by Employee X took place while Employee X was at work and while engaged in servicing the phone on Google's behalf. Accordingly, Google is liable for Employee X's actions.

103.     As a direct, proximate, and foreseeable result of Employee X's conduct for which Google is liable, Jane Doe has suffered injuries including severe emotional distress and mental anguish, post-traumatic stress disorder, adjustment disorder, a loss of enjoyment of life, reasonable and necessary medical expenses, loss of time from her gainful employment, attorney's fees, and other injuries and losses. John Doe has suffered injuries including severe emotional distress and mental anguish, loss of consortium, a loss of enjoyment of life, attorney's fees, and other injuries and losses. Furthermore, the conduct at issue was wanton, malicious, or oppressive, thus warranting the imposition of enhanced compensatory damages.

**COUNT VI:**
**Negligent Infliction of Emotional Distress**
**Jane Doe v. Google**

104.     The Does incorporate paragraphs 1 - 103 by reference.

105.     Employee X negligently caused severe emotional distress to Jane Doe by exploiting the fact that the phone broke and that the Does trusted that it would be professionally and responsibly handled by Google and the other Defendants in accordance with the care plan. Employee X accessed intensely intimate photographs meant to be shared only between husband and wife, stole at least one such photograph, posted the photograph on Jane's public social media

pages so that it could be seen by several thousand of Jane's friends, family, business contacts, acquaintances, and other community members, and made it appear that Jane herself had posted the photo. Employee X also posed as Jane and sent profanity laden text messages to at least one of Jane's customers and attempted to access Jane's financial information and social security numbers.

106.    Upon information and belief, Employee X was an agent and/or employee of Google when he accessed the Does' data and posted the photograph on Jane Doe's social media pages. Upon information and belief, Employee X had access to the phone because Employee X's job involved servicing and repairing the phone on behalf of Google. Upon information and belief, the tortious behavior engaged in by Employee X took place while Employee X was at work and while engaged in servicing the phone on behalf of Google. Accordingly, Google is liable for Employee X's actions.

107.    As a direct, proximate, and foreseeable result of Employee X's conduct for which Google is liable, Jane Doe has suffered a deterioration of her physical and mental well-being, requiring her to seek medical care for post-traumatic stress disorder, adjustment disorder, and severe and significant weight loss. Jane Doe is also entitled to damages for enjoyment of life, reasonable and necessary medical expenses, loss of time from her gainful employment, attorney's fees and other injuries and losses. Furthermore, the conduct at issue was wanton, malicious, or oppressive, thus warranting the imposition of enhanced compensatory damages.

**COUNT VII:**
**Negligent Hiring and Supervision**
**Jane Doe and John Doe v. KMT Wireless, LLC d/b/a Cynergy**

108. The Does incorporate paragraphs 1 - 107 by reference.

109. An entity conducting an activity through servants or other agents is subject to liability for harm resulting from the servants or agent' conduct if the entity is negligent or reckless: (a) in giving improper or ambiguous orders or in failing to make proper regulations; or (b) in the employment of improper persons in work involving risk of harm to others; or (c) in the supervision of the servants or agents' activity; or (d) in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not they are the entities' servants or agents, upon premises or with instrumentalities under the entities' control. *See* Restatement (Second) of Agency, §213,

110. Cynergy ran Google's phone servicing facility, and accepted phones for servicing, knowing that its agents and/or employees would be receiving and servicing phones that contained all manner of personal, private, and sensitive information.

111. Cynergy had a duty to ensure that it had established reasonable and appropriate policies to safeguard any personal, private, or sensitive information accessible through the phone belonging to John Doe and used by Jane Doe.

112. Cynergy had a duty to properly vet employees to ensure that the people it retained to perform repairs were trustworthy and professional, rather than people who would misuse the phone if given an opportunity.

113. Cynergy had a duty to supervise the agents or employees it retained to perform repairs on the phone belonging to John Doe and used by Jane Doe to ensure that the agents or employees were actually performing their job duties, rather than accessing, stealing, and otherwise misusing the Does' personal, private, and sensitive information.

114. Cynergy had a duty to prevent Employee X form accessing, stealing, and otherwise misusing the Does' personal, private, and sensitive information while Employee X was

physically located at the facility operated by Cynergy and located at 4055 Corporate Drive, Grapevine, Texas 76501.

115.    Cynergy breached these duties by failing to establish or enforce policies that would have safeguarded the personal, private, and sensitive information accessible through the phone belonging to John Doe and used by Jane Doe, by failing to properly vet and/or supervise Employee X, who was not only given access to the phone, but who posted a sexually explicit and intimate photograph on Jane's social media, posed as Jane Doe to send at least one profanity laden text message to a work contact, and accessed the Does' financial information, all while physically located at the facility operated by Cynergy and located at 4055 Corporate Drive, Grapevine, Texas 76501.

116.    As a direct, proximate, and foreseeable result of Cynergy's negligence, Jane Doe has suffered injuries including severe emotional distress and mental anguish, post-traumatic stress disorder, adjustment disorder, a loss of enjoyment of life, reasonable and necessary medical expenses, loss of time from her gainful employment, attorneys fees, and other injuries and losses, and John Doe has suffered injuries including severe emotional distress and mental anguish, loss of consortium, a loss of enjoyment of life, attorneys fees, and other injuries and losses. Furthermore, the conduct at issue was wanton, malicious, or oppressive, thus warranting the imposition of enhanced compensatory damages.

**COUNT VIII:**
**Invasion of Privacy: Public disclosure of Private Facts**
**Jane Doe and John Doe v. KMT Wireless, LLC d/b/a Cynergy**

117. The Does incorporate paragraphs 1 – 116 by reference.

118.    One who gives publicity to a matter concerning the private life of another is subject to liability for invasion of privacy if the matter publicized is of a kind that would be highly offensive to a reasonable person and is not of legitimate concern to the public.

119.    Employee X invaded the Does' privacy by posting an intensely intimate photograph belonging to the Does and meant to be shared only between husband and wife on Jane Does' public social media page so that it could be seen by several thousand of the Does' friends, family, business contacts, acquaintances, and other community members, and did so while posing as Jane Doe. Having this type of photograph exposed in this way would be highly offensive and traumatic to any reasonable person, and the photograph was not of any legitimate concern to the public.

120.    Upon information and belief, pursuant to an agreement between Cynergy and Google, Cynergy operates a facility that repairs and services phones that have coverage pursuant to Google's Preferred Care Plan. Upon information and belief, Employee X was an agent and/or employee of Cynergy when he accessed the Does' data and posted the photograph on Jane Doe's social media pages. Employee X had access to the phone because Employee X's job involved servicing and repairing the phone. Upon information and belief, the tortious behavior engaged in by Employee X took place while Employee X was at work and while engaged in servicing the phone. Accordingly, Cynergy is liable for Employee X's actions.

121.    As a direct, proximate, and foreseeable result of Employee X's conduct for which Cynergy is liable, Jane Doe has suffered damages including a deterioration of her physical and mental well-being, requiring her to seek medical care for post-traumatic stress disorder, adjustment disorder, and severe and significant weight loss, severe emotional distress and mental anguish, loss of enjoyment of life, reasonable and necessary medical expenses, loss of time from

her gainful employment, attorneys fees, and other injuries and losses, and John Doe has suffered injuries including severe emotional distress and mental anguish, loss of consortium, a loss of enjoyment of life, attorneys fees, and other injuries and losses. Furthermore, the conduct at issue was wanton, malicious, or oppressive, thus warranting the imposition of enhanced compensatory damages.

## COUNT IX:
### Invasion of Privacy: Intrusion Upon Seclusion
### Jane Doe and John Doe v. KMT Wireless, LLC d/b/a Cynergy

122.    The Does incorporate paragraphs 1 – 121 herein by reference.

123.    One who suffers an intrusion upon their solitude or seclusion may recover damages for the deprivation of their seclusion.

124.    Employee X intruded upon the Does' seclusion by accessing intensely intimate photographs belonging to the Does and meant to be shared only between husband and wife, stealing at least one such photograph, posting the photograph on Jane's public social media pages so that it could be seen by several thousand of the Does' friends, family, business contacts, acquaintances, and other community members, and making it appear that Jane herself had posted the photo.

125.    Upon information and belief, pursuant to an agreement between Cynergy and Google, Cynergy operates a facility that repairs and services phones that have coverage pursuant to Google's Preferred Care Plan. Upon information and belief, Employee X was an agent and/or employee of Cynergy when he accessed the Does' data and posted the photograph on Jane Doe's social media pages. Employee X had access to the phone because Employee X's job involved servicing and repairing the phone. Upon information and belief, the tortious behavior engaged in

by Employee X took place while Employee X was at work and while engaged in servicing the phone. Accordingly, Cynergy is liable for Employee X's actions.

126.    As a direct, proximate, and foreseeable result of Employee X's conduct for which Cynergy is liable, Jane Doe has suffered a deterioration of her physical and mental well-being, requiring her to seek medical care for post-traumatic stress disorder, adjustment disorder, and severe and significant weight loss. Jane Doe is also entitled to damages for enjoyment of life, reasonable and necessary medical expenses, loss of time from her gainful employment, attorneys fees, and other injuries and losses arising out of Employee X's actions. John Doe has suffered injuries including severe emotional distress and mental anguish, loss of consortium, a loss of enjoyment of life, attorney's fees and other injuries and losses. Furthermore, the conduct at issue was wanton, malicious, or oppressive, thus warranting the imposition of enhanced compensatory damages.

**COUNT X:**
**Invasion of Privacy: False Light**
**Jane Doe and John Doe v. KMT Wireless, LLC d/b/a Cynergy**

127    The Does incorporate paragraphs 1 – 126 by reference.

128.    An entity is liable for invasion of privacy based on false light if they cause the publication of true information that creates a false impression about the plaintiff.

129.    Employee X placed the Does in a false light by accessing intensely intimate photographs belonging to the Does and meant to be shared only between husband and wife, stealing at least one such photograph, posting the photograph on Jane Doe's public social media pages so that it could be seen by several thousand of the Does' friends, family, business contacts, acquaintances, and other community members, and making it appear that Jane Doe herself had posted the photo. Employee X's actions created the impression that the Does intended for their

friends and family to see the highly intimate photograph, and given the nature of the photograph, that implication would be highly offensive to a reasonable person.

130.    Employee X also posed as Jane Doe and sent profanity laden text messages to at least one of her business contacts. By engaging in this behavior, Employee X intentionally engaged in behavior that was intended to make Jane Doe appear unprofessional, rude, and unreasonable to her business contacts.

131.    Upon information and belief, pursuant to an agreement between Cynergy and Google, Cynergy operates a facility that repairs and services phones that have coverage pursuant to Google's Preferred Care Plan. Upon information and belief, Employee X was an agent and/or employee of Cynergy when he accessed the Does' data and posted the photograph on Jane Doe's social media pages. Employee X had access to the phone because Employee X's job involved servicing and repairing the phone. Upon information and belief, the tortious behavior engaged in by Employee X took place while Employee X was at work and while engaged in servicing the phone. Accordingly, Cynergy is liable for Employee X's actions.

132.    As a direct, proximate, and foreseeable result of Employee X's conduct for which Cynergy is liable, Jane Doe has suffered a deterioration of her physical and mental well-being, requiring her to seek medical care for post-traumatic stress disorder, adjustment disorder, and severe and significant weight loss. Jane Doe is also entitled to damages for enjoyment of life, reasonable and necessary medical expenses, loss of time from her gainful employment, attorneys fees, and other injuries and losses arising out of Employee X's actions. John Doe has suffered injuries including severe emotional distress and mental anguish, loss of consortium, a loss of enjoyment of life, attorneys' fees and other injuries and losses. Furthermore, the conduct at issue

was wanton, malicious, or oppressive, thus warranting the imposition of enhanced compensatory damages.

**COUNT XI:**
**Intentional Infliction of Emotional Distress**
**Jane Doe and John Doe v. KMT Wireless, LLC d/b/a Cynergy**

133.    The Does incorporate paragraphs 1 - 132 by reference.

134.    Employee X intentionally caused severe emotional distress to the Does by exploiting the fact that the phone broke and the Does trusted that it would be professionally and responsibly handled in accordance with the care plan.  Employee X accessed intensely intimate photographs meant to be shared only between husband and wife, stole at least one such photograph, posted the photograph on Jane's public social media pages so that it could be seen by several thousand of the Does' friends, family, business contacts, acquaintances, and other community members, and made it appear that Jane herself had posted the photo. Employee X also posed as Jane and sent profanity laden text messages to at least one of Jane's customers and attempted to access the Does' financial information and social security numbers.

135.    This conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and is to be regarded as atrocious and utterly intolerable in a civilized community.

136.    Upon information and belief, pursuant to an agreement between Cynergy and Google, Cynergy operates a facility that repairs and services phones that have coverage pursuant to Google's Preferred Care Plan. Upon information and belief, Employee X was an agent and/or employee of Cynergy when he accessed the Does' data and posted the photograph on Jane Doe's social media pages. Employee X had access to the phone because Employee X's job involved servicing and repairing the phone. Upon information and belief, the tortious behavior engaged in

by Employee X took place while Employee X was at work and while engaged in servicing the phone. Accordingly, Cynergy is liable for Employee X's actions.

137.    As a direct, proximate, and foreseeable result of Employee X's conduct for which Cynergy is liable, Jane Doe has suffered injuries including severe emotional distress and mental anguish, post-traumatic stress disorder, adjustment disorder, a loss of enjoyment of life, reasonable and necessary medical expenses, loss of time from her gainful employment, attorney's fees, and other injuries and losses. John Doe has suffered injuries including severe emotional distress and mental anguish, loss of consortium, a loss of enjoyment of life, attorney's fees, and other injuries and losses. Furthermore, the conduct at issue was wanton, malicious, or oppressive, thus warranting the imposition of enhanced compensatory damages.

### COUNT XII:
### Negligent Infliction of Emotional Distress
### Jane Doe v. KMT Wireless, LLC d/b/a Cynergy

138.    The Does incorporate paragraphs 1 - 137 by reference.

139.    Employee X negligently caused severe emotional distress to Jane Doe by exploiting the fact that the phone broke and that the Does trusted that it would be professionally and responsibly handled in accordance with the care plan.  Employee X accessed intensely intimate photographs meant to be shared only between husband and wife, stole at least one such photograph, posted the photograph on Jane's public social media pages so that it could be seen by several thousand of Jane's friends, family, business contacts, acquaintances, and other community members, and made it appear that Jane herself had posted the photo. Employee X also posed as Jane and sent profanity laden text messages to at least one of Jane's customers and attempted to access Jane's financial information and social security numbers.

140.     Upon information and belief, pursuant to an agreement between Cynergy and Google, Cynergy operates a facility that repairs and services phones that have coverage pursuant to Google's Preferred Care Plan. Upon information and belief, Employee X was an agent and/or employee of Cynergy when he accessed the Does' data and posted the photograph on Jane Doe's social media pages. Employee X had access to the phone because Employee X's job involved servicing and repairing the phone. Upon information and belief, the tortious behavior engaged in by Employee X took place while Employee X was at work and while engaged in servicing the phone. Accordingly, Cynergy is liable for Employee X's actions.

141.     As a direct, proximate, and foreseeable result of Employee X's conduct for which Cynergy is liable, Jane Doe has suffered a deterioration of her physical and mental well-being, requiring her to seek medical care for post-traumatic stress disorder, adjustment disorder, and severe and significant weight loss. Jane Doe is also entitled to damages for enjoyment of life, reasonable and necessary medical expenses, loss of time from her gainful employment, attorney's fees and other injuries and losses. Furthermore, the conduct at issue was wanton, malicious, or oppressive, thus warranting the imposition of enhanced compensatory damages.

**COUNT XIII:**
**Negligent Hiring and Supervision**
**Jane Doe and John Doe v. Entities 1 - 99**

142.     The Does incorporate paragraphs 1 - 141 by reference.

143.     An entity conducting an activity through servants or other agents is subject to liability for harm resulting from the servants or agent' conduct if the entity is negligent or reckless: (a) in giving improper or ambiguous orders or in failing to make proper regulations; or (b) in the employment of improper persons in work involving risk of harm to others; or (c) in the supervision of the servants or agents' activity; or (d) in permitting, or failing to prevent,

negligent or other tortious conduct by persons, whether or not they are the entities' servants or agents, upon premises or with instrumentalities under the entities' control. *See* Restatement (Second) of Agency, §213.

144.    To the extent that Entity 1, managed, or otherwise oversaw Google's phone servicing facility, and/or accepted phones for service or repair, Entity 1 had a duty to ensure that it had established reasonable and appropriate policies to safeguard any personal, private, or sensitive information accessible through the phone belonging to John Doe and used by Jane Doe; to properly vet employees to ensure that the people it retained to perform repairs were trustworthy and professional, rather than people who would misuse the phone if given an opportunity; to supervise the agents or employees it retained to perform repairs on the phone belonging to John Doe and used by Jane Doe to ensure that the agents or employees were actually performing their job duties, rather than accessing, stealing, and otherwise misusing the Does' personal, private, and sensitive information; and/or to prevent Employee X form accessing, stealing, and otherwise misusing the Does' personal, private, and sensitive information.

145.    To the extent that Entity 1 breached these duties by failing to establish or enforce policies that would have safeguarded the personal, private, and sensitive information accessible through the phone belonging to John Doe and used by Jane Doe, by failing to properly vet and/or supervise Employee X, who was not only given access to the phone, but who posted a sexually explicit and intimate photograph on Jane's social media, posed as Jane Doe to send at least one profanity laden text message to a work contact, and accessed the Does' financial information, Entity 1 is liable for Jane and John Doe's resulting damages.

146.     Jane Doe has suffered injuries including severe emotional distress and mental anguish, post-traumatic stress disorder, adjustment disorder, a loss of enjoyment of life, reasonable and necessary medical expenses, loss of time from her gainful employment, attorneys' fees, and other injuries and losses, and John Doe has suffered injuries including severe emotional distress and mental anguish, loss of consortium, a loss of enjoyment of life, attorneys fees, and other injuries and losses. Furthermore, the conduct at issue was wanton, malicious, or oppressive, thus warranting the imposition of enhanced compensatory damages.

### COUNT XIV:
### Invasion of Privacy: Public disclosure of Private Facts
### Jane Doe and John Doe v. Entities 1 - 99

147.     The Does incorporate paragraphs 1 – 146 by reference.

148.     One who gives publicity to a matter concerning the private life of another is subject to liability for invasion of privacy if the matter publicized is of a kind that would be highly offensive to a reasonable person and is not of legitimate concern to the public.

149.     Employee X invaded the Does' privacy by posting an intensely intimate photograph belonging to the Does and meant to be shared only between husband and wife on Jane Does' public social media page so that it could be seen by several thousand of the Does' friends, family, business contacts, acquaintances, and other community members, and did so while posing as Jane Doe. Having this type of photograph exposed in this way would be highly offensive and traumatic to any reasonable person, and the photograph was not of any legitimate concern to the public.

150.     To the extent that Employee X was an agent and/or employee of Entity 1 when he accessed the Does' data and posted the photograph on Jane Doe's social media pages, Entity 1 is liable for Employee X's actions.

151.    As a direct, proximate, and foreseeable result of Employee X's conduct for which Entity 1 is liable, Jane Doe has suffered damages including a deterioration of her physical and mental well-being, requiring her to seek medical care for post-traumatic stress disorder, adjustment disorder, and severe and significant weight loss, severe emotional distress and mental anguish, loss of enjoyment of life, reasonable and necessary medical expenses, loss of time from her gainful employment, attorneys fees, and other injuries and losses, and John Doe has suffered injuries including severe emotional distress and mental anguish, loss of consortium, a loss of enjoyment of life, attorneys fees, and other injuries and losses. Furthermore, the conduct at issue was wanton, malicious, or oppressive, thus warranting the imposition of enhanced compensatory damages.

### COUNT XV:
### Invasion of Privacy: Intrusion Upon Seclusion
### Jane and John Doe v. Entities 1 - 99

151.    The Does incorporate paragraphs 1 – 150 herein by reference.

152.    One who suffers an intrusion upon their solitude or seclusion may recover damages for the deprivation of their seclusion.

153.    Employee X intruded upon the Does' seclusion by accessing intensely intimate photographs belonging to the Does and meant to be shared only between husband and wife, stealing at least one such photograph, posting the photograph on Jane's public social media pages so that it could be seen by several thousand of the Does' friends, family, business contacts, acquaintances, and other community members, and making it appear that Jane herself had posted the photo.

154.     To the extent that Employee X was an agent and/or employee of Entity 1 when he accessed the Does' data and posted the photograph on Jane Doe's social media pages, Entity 1 is liable for Employee X's actions.

155.     As a direct, proximate, and foreseeable result of Employee X's conduct for which Entity 1 is liable, Jane Doe has suffered a deterioration of her physical and mental well-being, requiring her to seek medical care for post-traumatic stress disorder, adjustment disorder, and severe and significant weight loss. Jane Doe is also entitled to damages for enjoyment of life, reasonable and necessary medical expenses, loss of time from her gainful employment, attorneys fees, and other injuries and losses arising out of Employee X's actions. John Doe has suffered injuries including severe emotional distress and mental anguish, loss of consortium, a loss of enjoyment of life, attorney's fees and other injuries and losses. Furthermore, the conduct at issue was wanton, malicious, or oppressive, thus warranting the imposition of enhanced compensatory damages.

## COUNT XVI:
### Invasion of Privacy: False Light
### Jane and John Doe v. Entities 1 - 99

156.     .The Does incorporate paragraphs 1 – 155 by reference.

157.     An entity is liable for invasion of privacy based on false light if they cause the publication of true information that creates a false impression about the plaintiff.

158.     Employee X placed the Does in a false light by accessing intensely intimate photographs belonging to the Does and meant to be shared only between husband and wife, stealing at least one such photograph, posting the photograph on Jane Doe's public social media pages so that it could be seen by several thousand of the Does' friends, family, business contacts, acquaintances, and other community members, and making it appear that Jane Doe herself had

posted the photo. Employee X's actions created the impression that the Does intended for their friends and family to see the highly intimate photograph, and given the nature of the photograph, that implication would be highly offensive to a reasonable person.

159.     Employee X also posed as Jane Doe and sent profanity laden text messages to at least one of her business contacts. By engaging in this behavior, Employee X intentionally engaged in behavior that was intended to make Jane Doe appear unprofessional, rude, and unreasonable to her business contacts.

160.     To the extent that Employee X was an agent and/or employee of Entity 1 when he accessed the Does' data and posted the photograph on Jane Doe's social media pages Entity 1 is liable for Employee X's actions.

161.     As a direct, proximate, and foreseeable result of Employee X's conduct for which Entity 1 is liable, Jane Doe has suffered a deterioration of her physical and mental well-being, requiring her to seek medical care for post-traumatic stress disorder, adjustment disorder, and severe and significant weight loss. Jane Doe is also entitled to damages for enjoyment of life, reasonable and necessary medical expenses, loss of time from her gainful employment, attorneys fees, and other injuries and losses arising out of Employee X's actions. John Doe has suffered injuries including severe emotional distress and mental anguish, loss of consortium, a loss of enjoyment of life, attorneys' fees and other injuries and losses. Furthermore, the conduct at issue was wanton, malicious, or oppressive, thus warranting the imposition of enhanced compensatory damages.

### COUNT XVII:
### Intentional Infliction of Emotional Distress
### Jane Doe and John Doe v. Entities 1 - 99

162.     The Does incorporate paragraphs 1 - 132 by reference.

163.     Employee X intentionally caused severe emotional distress to the Does by exploiting the fact that the phone broke and the Does trusted that it would be professionally and responsibly handled in accordance with the care plan.  Employee X accessed intensely intimate photographs meant to be shared only between husband and wife, stole at least one such photograph, posted the photograph on Jane's public social media pages so that it could be seen by several thousand of the Does' friends, family, business contacts, acquaintances, and other community members, and made it appear that Jane herself had posted the photo. Employee X also posed as Jane and sent profanity laden text messages to at least one of Jane's customers and attempted to access the Does' financial information and social security numbers.

164.     This conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and is to be regarded as atrocious and utterly intolerable in a civilized community.

165.     To the extent that Employee X was an agent and/or employee of Entity 1 when he accessed the Does' data and posted the photograph on Jane Doe's social media pages, Entity 1 is liable for Employee X's actions.

166.     As a direct, proximate, and foreseeable result of Employee X's conduct for which Entity 1 is liable, Jane Doe has suffered injuries including severe emotional distress and mental anguish, post-traumatic stress disorder, adjustment disorder, a loss of enjoyment of life, reasonable and necessary medical expenses, loss of time from her gainful employment, attorney's fees, and other injuries and losses. John Doe has suffered injuries including severe emotional distress and mental anguish, loss of consortium, a loss of enjoyment of life, attorney's fees, and other injuries and losses. Furthermore, the conduct at issue was wanton, malicious, or oppressive, thus warranting the imposition of enhanced compensatory damages.

**COUNT XVIII:**
**Negligent Infliction of Emotional Distress**
**Jane Doe v. Entities 1 - 99**

167. The Does incorporate paragraphs 1 - 137 by reference.

168.     Employee X negligently caused severe emotional distress to Jane Doe by exploiting the fact that the phone broke and that the Does trusted that it would be professionally and responsibly handled in accordance with the care plan.  Employee X accessed intensely intimate photographs meant to be shared only between husband and wife, stole at least one such photograph, posted the photograph on Jane's public social media pages so that it could be seen by several thousand of Jane's friends, family, business contacts, acquaintances, and other community members, and made it appear that Jane herself had posted the photo. Employee X also posed as Jane and sent profanity laden text messages to at least one of Jane's customers and attempted to access Jane's financial information and social security numbers.

169.     To the extent that Employee X was an agent and/or employee of Entity 1 when he accessed the Does' data and posted the photograph on Jane Doe's social media pages Entity 1 is liable for Employee X's actions.

170.     As a direct, proximate, and foreseeable result of Employee X's conduct for which Entity 1 is liable, Jane Doe has suffered a deterioration of her physical and mental well-being, requiring her to seek medical care for post-traumatic stress disorder, adjustment disorder, and severe and significant weight loss. Jane Doe is also entitled to damages for enjoyment of life, reasonable and necessary medical expenses, loss of time from her gainful employment, attorney's fees and other injuries and losses. Furthermore, the conduct at issue was wanton, malicious, or oppressive, thus warranting the imposition of enhanced compensatory damages.

**COUNT XIX:**
**Invasion of Privacy: Public disclosure of Private Facts**
**Jane Doe and John Doe v. Employees A - X**

171.    The Does incorporate paragraphs 1 – 170 by reference.

172.    One who gives publicity to a matter concerning the private life of another is subject to liability for invasion of privacy if the matter publicized is of a kind that would be highly offensive to a reasonable person and is not of legitimate concern to the public.

173.    Employee X invaded the Does' privacy by posting an intensely intimate photograph belonging to the Does and meant to be shared only between husband and wife on Jane Does' public social media page so that it could be seen by several thousand of the Does' friends, family, business contacts, acquaintances, and other community members, and did so while posing as Jane Doe. Having this type of photograph exposed in this way would be highly offensive and traumatic to any reasonable person, and the photograph was not of any legitimate concern to the public.

174.    As a direct, proximate, and foreseeable result of Employee X's conduct Jane Doe has suffered damages including a deterioration of her physical and mental well-being, requiring her to seek medical care for post-traumatic stress disorder, adjustment disorder, and severe and significant weight loss, severe emotional distress and mental anguish, loss of enjoyment of life, reasonable and necessary medical expenses, loss of time from her gainful employment, attorneys fees, and other injuries and losses, and John Doe has suffered injuries including severe emotional distress and mental anguish, loss of consortium, a loss of enjoyment of life, attorneys fees, and other injuries and losses. Furthermore, the conduct at issue was wanton, malicious, or oppressive, thus warranting the imposition of enhanced compensatory damages.

**COUNT XX:**
**Invasion of Privacy: Intrusion Upon Seclusion**
**Jane and John Doe v. Employees A - X**

175.    The Does incorporate paragraphs 1 – 174 herein by reference.

176.    One who suffers an intrusion upon their solitude or seclusion may recover damages for the deprivation of their seclusion.

177.    Employee X intruded upon the Does' seclusion by accessing intensely intimate photographs belonging to the Does and meant to be shared only between husband and wife, stealing at least one such photograph, posting the photograph on Jane's public social media pages so that it could be seen by several thousand of the Does' friends, family, business contacts, acquaintances, and other community members, and making it appear that Jane herself had posted the photo.

178.    As a direct, proximate, and foreseeable result of Employee X's conduct, Jane Doe has suffered a deterioration of her physical and mental well-being, requiring her to seek medical care for post-traumatic stress disorder, adjustment disorder, and severe and significant weight loss. Jane Doe is also entitled to damages for enjoyment of life, reasonable and necessary medical expenses, loss of time from her gainful employment, attorneys fees, and other injuries and losses arising out of Employee X's actions. John Doe has suffered injuries including severe emotional distress and mental anguish, loss of consortium, a loss of enjoyment of life, attorney's fees and other injuries and losses. Furthermore, the conduct at issue was wanton, malicious, or oppressive, thus warranting the imposition of enhanced compensatory damages.

**COUNT XXI:**
**Invasion of Privacy: False Light**
**Jane and John Doe v. Employees A - X**

179.    .The Does incorporate paragraphs 1 – 178 by reference.

180.    A person is liable for invasion of privacy based on false light if they cause the publication of true information that creates a false impression about the plaintiff.

181.    Employee X placed the Does in a false light by accessing intensely intimate photographs belonging to the Does and meant to be shared only between husband and wife, stealing at least one such photograph, posting the photograph on Jane Doe's public social media pages so that it could be seen by several thousand of the Does' friends, family, business contacts, acquaintances, and other community members, and making it appear that Jane Doe herself had posted the photo. Employee X's actions created the impression that the Does intended for their friends and family to see the highly intimate photograph, and given the nature of the photograph, that implication would be highly offensive to a reasonable person.

182.    Employee X also posed as Jane Doe and sent profanity laden text messages to at least one of her business contacts. By engaging in this behavior, Employee X intentionally engaged in behavior that was intended to make Jane Doe appear unprofessional, rude, and unreasonable to her business contacts.

183.    As a direct, proximate, and foreseeable result of Employee X's conduct, Jane Doe has suffered a deterioration of her physical and mental well-being, requiring her to seek medical care for post-traumatic stress disorder, adjustment disorder, and severe and significant weight loss. Jane Doe is also entitled to damages for enjoyment of life, reasonable and necessary medical expenses, loss of time from her gainful employment, attorneys fees, and other injuries and losses arising out of Employee X's actions. John Doe has suffered injuries including severe emotional distress and mental anguish, loss of consortium, a loss of enjoyment of life, attorneys' fees and other injuries and losses. Furthermore, the conduct at issue was wanton, malicious, or oppressive, thus warranting the imposition of enhanced compensatory damages.

**COUNT XXII:**
**Intentional Infliction of Emotional Distress**
**Jane Doe and John Doe v. Employees A - X**

184.    The Does incorporate paragraphs 1 - 183 by reference.

185.    Employee X intentionally caused severe emotional distress to the Does by exploiting the fact that the phone broke and the Does trusted that it would be professionally and responsibly handled in accordance with the care plan.  Employee X accessed intensely intimate photographs meant to be shared only between husband and wife, stole at least one such photograph, posted the photograph on Jane's public social media pages so that it could be seen by several thousand of the Does' friends, family, business contacts, acquaintances, and other community members, and made it appear that Jane herself had posted the photo. Employee X also posed as Jane and sent profanity laden text messages to at least one of Jane's customers and attempted to access the Does' financial information and social security numbers.

186.    This conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and is to be regarded as atrocious and utterly intolerable in a civilized community.

187.    As a direct, proximate, and foreseeable result of Employee X's conduct, Jane Doe has suffered injuries including severe emotional distress and mental anguish, post-traumatic stress disorder, adjustment disorder, a loss of enjoyment of life, reasonable and necessary medical expenses, loss of time from her gainful employment, attorney's fees, and other injuries and losses. John Doe has suffered injuries including severe emotional distress and mental anguish, loss of consortium, a loss of enjoyment of life, attorney's fees, and other injuries and losses. Furthermore, the conduct at issue was wanton, malicious, or oppressive, thus warranting the imposition of enhanced compensatory damages.

**COUNT XXIII:**
**Negligent Infliction of Emotional Distress**
**Jane Doe v. Employees A - X**

188.    The Does incorporate paragraphs 1 - 187 by reference.

189.    Employee X negligently caused severe emotional distress to Jane Doe by exploiting the fact that the phone broke and that the Does trusted that it would be professionally and responsibly handled in accordance with the care plan.  Employee X accessed intensely intimate photographs meant to be shared only between husband and wife, stole at least one such photograph, posted the photograph on Jane's public social media pages so that it could be seen by several thousand of Jane's friends, family, business contacts, acquaintances, and other community members, and made it appear that Jane herself had posted the photo. Employee X also posed as Jane and sent profanity laden text messages to at least one of Jane's customers and attempted to access Jane's financial information and social security numbers.

190.    As a direct, proximate, and foreseeable result of Employee X's conduct, Jane Doe has suffered a deterioration of her physical and mental well-being, requiring her to seek medical care for post-traumatic stress disorder, adjustment disorder, and severe and significant weight loss. Jane Doe is also entitled to damages for enjoyment of life, reasonable and necessary medical expenses, loss of time from her gainful employment, attorney's fees and other injuries and losses. Furthermore, the conduct at issue was wanton, malicious, or oppressive, thus warranting the imposition of enhanced compensatory damages.

**COUNT XXIV:**
**Violation of NH RSA 358-A, the New Hampshire Consumer Protection Act**
**Jane and John Doe v. Google, LLC, KMT Wireless, LLC d/b/a Cynergy and Entities 1 – 99**

191.    The Does incorporate by reference paragraphs 1 – 190.

192.    Pursuant to NH RSA 358-A, "any person injured by another's use of any method, act or practice declared unlawful under this chapter may bring an action for damages . . ." NH RSA 358-A:10, I.

193.    NH RSA 358-A applies to trade or commerce directly or indirectly affecting the people of New Hampshire.

194.    Pursuant to the statute, "[i]t shall be unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state." NH RSA 358-A:2.

194.    The Defendants committed acts in violation of NH RSA 358-A:2 by, among other acts and omissions:

A.    Advertising, promoting, or otherwise offering the Preferred Care Plan to the general public, including John Doe, and representing that they were competent to provide phone repair services in a safe manner and in accordance with a reasonable standard of care;

B.    Instructing John Doe to give them custody of the phone for servicing pursuant to the Preferred Care Plan based on the representation that the phone would be serviced in a professional manner, and that it would be handled with reasonable care;

C.    Retaining Employee X, a person who clearly should not have been given access to personal, sensitive or private information, to provide the repair services promised by the Defendants;

D.    Failing to supervise or put safeguards or policies in place to ensure that Employee X, a person who clearly should not have been given access to personal, sensitive or

private information, would not be able to misuse the Does' phone while performing the repair services promised by the Defendants.

195.   The Defendants committed acts in violation of NH RSA 358-A:2 that are both unlawful and offend public policy as established by statute and common law such that it is within the penumbra of established concepts of unfairness.

196.   The Defendants' conduct was objectionable and attained a level of rascality that would raise an eyebrow of someone inured to the rough and tumble world of commerce.

197.   Jane and John Doe suffered actual damages as the result of the Defendants' conduct and acts and omissions.

198.   The actions of the Defendants were wanton, malicious, or oppressive such that the compensatory damages should reflect the aggravating circumstances and be enhanced.

199.   Defendants' acts and omissions were willful and knowing. As a result, Jane and John Doe are entitled to multiplication of their damages of up to three times, but not less than two times. *See* NH RSA 358-A:10.

200.   Jane and John Doe are also entitled to their reasonable attorney's fees, interest and costs. *See* NH RSA 358-A:10.

201.   Defendants' actions and omissions described above cause them to be independently liable for the damages caused to the Plaintiffs. In addition, or alternatively, the Defendants' actions or omissions were in concert with one another, and they are jointly and severally liable for the damages caused to Jane and John Doe.

## **JURY DEMAND**

Plaintiffs Jane and John Doe demand a trial by jury on all matters so-triable.

**WHEREFORE**, the Plaintiffs Jane and John Doe respectfully request that this Court:

43

A.  Enter judgment in favor of the Plaintiffs and against the Defendants on all counts;

B.  Award direct, compensatory, and enhanced compensatory damages in the maximum amount allowed by law;

C.  Award double or triple damages for Defendants' willful and knowing conduct in violation of NH RSA 358-A:10, I, plus reasonable attorney's fees, interest and costs as allowed under statute;

D.  Award compensatory damages to Plaintiffs for past and future damages, including but not limited to pain and suffering for severe and permanent personal injuries sustained by the Plaintiffs, health care costs, lost wages, together with interest and costs as provided by law;

E.  Assess all reasonable attorneys' fees, interest and costs of this action against Defendants; and

F.  Award such other relief as this Court deems just and proper.

Respectfully submitted,

**JANE AND JOHN DOE**

By their attorneys,

Lyons Law Offices, P.A.

Dated: 11/29/22                                   **By: /s/John E. Lyons**
John E. Lyons, Esq. (NH Bar #1535)
One New Hampshire Avenue, Suite 235
Portsmouth, NH 03801
Phone: (603) 431-5144
Fax: (603) 431-5181
Email:  jlyons@lyonslaw.net
                abourdages@lyonslaw.net

**AND**

Getman, Schulthess, Steere & Poulin, P.A.

Dated: 11/29/22                    By:    /s/ Clara E. Lyons
                                   Clara E. Lyons, Esq. (NH Bar #20054)
                                   1838 Elm Street
                                   Manchester, NH 03104
                                   Phone: (603)634-4300
                                   Email: Clyons@gssp-lawyers.com